# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Lea Baker,

    Plaintiff,

v.

State of Nevada, et al.,

    Defendants

Case No.: 2:14-cv-1631-JAD-VCF

**Order Granting in Part Defendants' Motions to Dismiss [Docs. 24, 37]**

    Lea Baker sues the State of Nevada, its department of corrections (NDOC), and various of her colleagues and supervisors for sexual harassment, retaliation, discrimination, and various torts she claims she suffered while employed as a corrections officer at the Florence McClure Women's Correctional Center (FMWCC). In a pair of motions,[1] defendants now move to dismiss several of Baker's claims. I find[2] that Baker's Title VII claims against the individual defendants fail as a matter of law because these defendants are not employers for Title VII purposes; that a significant portion of Baker's retaliation claim is further barred by her failure to exhaust administrative remedies; and that the Eleventh Amendment precludes Baker's state-law claims[3] against the State of Nevada, NDOC, and the individual defendants sued in their official capacities. I further conclude that Baker has failed to state a plausible racial-discrimination claim under 42 U.S.C. § 1981, or an intentional-infliction-of-emotional-distress claim against anyone but Robert Hendrix, individually. Accordingly, I grant the motions in part, dismiss Baker's third cause of action and portions of her first, second, fourth, fifth, and eighth claims for relief, and give Baker until June 1, 2015, to file a proper motion for leave to amend.

---

[1] Docs. 24, 37.

[2] I find these matters suitable for disposition without oral argument. Nev. L.R. 78-2.

[3] To the extent defendants move for their dismissal. Defendants did not move to dismiss Baker's claims for battery, assault, or invasion of privacy (claims 6, 7, and 9).

1

## Background[4]

Baker was a correctional officer at NDOC's FMWCC facility. She claims her troubles began when she was written up for a March 18, 2009, incident in the sally port "in relation to identifying inmates for transport and searching a vehicle before it left the institution."[5] Baker alleges she was continually harassed by Curtis Ross, a senior correctional officer who was attracted to her.[6] When Ross asked one of Baker's coworkers if the two were dating and inquired of Baker what she had done with her personal leave,[7] Baker responded in front of Correctional Lieutenant Robert Hendrix, "Don't ask me about my personal life. I've got nothing to say to you."[8] Later that day, Ross placed his hand on her back, stepped beside her until their shoulders touched, and placed his arm around her waist in an action "like a hug"[9] and told Baker she could have been written up for her lack of professionalism.[10] Baker reported Ross to management.[11] Nearly a month later, Baker received a notice of internal investigation, which Lieutenant Joseph Owens was charged with overseeing.[12] The investigation was originally targeted at Baker for "staff discourtesy."[13]

On November 9, 2009, Baker filed a complaint with the Nevada Equal Rights Commission (NERC) (#34B-2010-00190), which alleged that "NDOC, through Owens' official actions, discriminated against her because of her sexual orientation, by harassing and sexually harassing

---

[4] The statements in this background section are taken from the complaint, are for context only, and are not to be construed as any finding of fact.

[5] Doc. 1 at 4.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 5.

[12] *Id.*

[13] *Id.* at 5-6.

her."[14] She alleged that the harassment ended on November 5, 2009, and the sexual harassment ended on October 9, 2009.[15] On November 11, 2009, after Baker filed her NERC complaint, Owens interviewed her in connection with NDOC's internal investigation and clarified that his investigation actually pertained to Baker's allegations against Ross, not the other way around.[16]

In January 2010, Baker was stationed to work in an armory that flooded, causing a health hazard.[17] Despite Baker's complaints about the conditions, NDOC did not remedy the problem, and Baker "walked around in inches of water for a week."[18] On January 27, 2010, after Baker cut her hand while trying to clean up the mess, another NDOC official informed Baker that Owens was taking her chair for his own use.[19] Later, Baker saw Owens, Assistant Warden Frank Dreeson, and Hendrix search her work area, purportedly "looking for ways to retaliate against her."[20]

Baker alleges she was retaliated against during a June 29, 2010, confrontation with an out-of-place inmate, T. Kernal.[21] Kernal, who had a history of attacking officers in prison, first refused to show Baker her identification, then cursed Baker and charged at her.[22] Another officer, Dimas, intercepted before the inmate reached Baker[23] and later told Baker that he "saw Lieutenant Hendrix standing down the hall . . . observing the whole incident."[24] Baker alleges that the event and

---

[14] *Id.* at 5.

[15] *Id.*

[16] *Id.* at 6.

[17] *Id.* at 7.

[18] *Id.*

[19] *Id.* at 8. Baker alleges that Owens also took a microwave from Baker's area that day. *Id.* at 7-8.

[20] *Id.*

[21] *Id.* at 13.

[22] *Id.*

[23] *Id.*

[24] *Id.*

1  Hendrix's disregard of her safety forced her to seek therapy.

2  Baker claims she endured a series of other allegedly retaliatory events. For example, on November 17, 2009, she filed a grievance contending that NDOC Director Skolnik, FMWCC Warden Sheryl Foster, and Dreeson, among others allowed improper shift bidding.[25] On March 5, 2010, Baker was involved in an incident at the sally port, when Hendrix initially refused to provide her with information to protect her from a coworker's work-related decision.[26] Baker also alleges that NDOC launched several retaliatory investigations against her for reporting sexually inappropriate conduct that Ross directed towards other NDOC staff.[27] Baker contends she was retaliated against (1) on June 30, 2010, when she was removed from her position from the sally port without explanation,[28] (2) on August 9, 2010, when her request for sick leave was denied,[29] (3) on December 1, 2010, when she was suspended without pay for an alleged incident of misconduct arising from the March 18, 2009 sally port incident,[30] and (4) at an undefined date, when she received new post orders.[31] After all of these incidents, on April 19, 2011, Baker amended her NERC complaint regarding sex and sex discrimination allegations.[32] She contends she was ultimately forced to retire due to an on-the-job injury, and she was refused permission to be reassigned as a caseworker despite possessing all necessary qualifications.[33]

On January 10, 2010, Baker filed an EEOC charge of discrimination, alleging sexual orientation discrimination: Ross sexually harassed her and Owens had been "rude, hostile, and

---

[25] *Id.* at 6.

[26] *Id.*

[27] *Id.* at 9-12.

[28] *Id.* at 14.

[29] *Id.* at 15-16.

[30] *Id.* at 16.

[31] *Id.* at 14-15.

[32] *Id.* at 17.

[33] *Id.*

4

sarcastic" after Baker reported Ross to management.[34]  On April 19, 2001, she amended her "ongoing" NERC complaint "regarding the sex and sexual orientation discrimination and retaliation she was facing"[35] to add a retaliation charge.  The amendment references the March 18, 2009, sally port incident, which Baker alleges had been investigated in "retaliation for filing a charge with NERC."[36]  She also reiterated the details of her sexual harassment charge, including that Owens "ha[d] been rude, hostile, and sarcastic after [she] filed the incident report."[37]  On February 27, 2014, the EEOC found reasonable cause to believe that Baker had been retaliated against for engaging in a protected activity, although it did not conclude that any sex or sexual orientation discrimination had occurred,[38] and Baker was issued her EEOC right-to-sue letter on July 7, 2014.[39]

Baker sued NDOC Director Howard Skolnik, Foster, Dreesen, Ross, Hendrix, and Owens, along with the State of Nevada and NDOC on October 4, 2014.[40]  She alleges nine claims (often without specifying which defendant or defendants are targeted in each claim): (1) Title VII sexual harassment; (2) Title VII retaliation against all defendants except Ross; (3) violation of the Civil Rights Act of 1866; (4) sex discrimination under NRS 613.330; (5) sexual orientation discrimination under NRS 613.330; (6) criminal battery against Ross under NRS 200.481 and 41.690; (7) assault against all defendants under NRS 200.471 and NRS 41.690; (8) intentional infliction of emotional distress against all defendants; and (9) invasion of privacy against Ross, Dreesen, Hendrix, and

---

[34] Doc. 24-1 at 2. I take judicial notice of Baker's charge of discrimination and notice of right to sue letter in accordance with Fed. R. Evid. 201.  See, e.g., In re American Apparel, Inc. Shareholder Derivative Litigation, 2012 WL 9506072, at *20 (C.D. Cal. July 31, 2012).  Baker also attaches three NERC intake inquiry forms to her response, for which defendants contend judicial notice is inappropriate because the documents are not sworn. Doc. 40 at 16-28; Doc. 41 at 4.  However, I need not resolve whether these documents are properly considered because, even if I considered them, they would not change my result.

[35] Doc. 1 at 17.

[36] Doc. 24-1 at 4.

[37] Id. at 5.

[38] Id. at 6.

[39] Id.

[40] Doc. 1 at 2-3.

Owens.[41]

Defendants now bring two motions to dismiss.[42] The first motion is brought by the state and NDOC, and by Skolnik, Foster, Dreesen, Ross, Hendrix, and Owens (collectively, the Individual Defendants) to the extent they are sued in their official capacities.[43] They offer four arguments: (1) Baker complains of retaliatory acts that were not first administratively vetted by the Nevada Equal Rights Commission (NERC) or the Equal Employment Opportunity Commission (EEOC), and her Title VII retaliation claim must be dismissed as to those unexhausted incidents; (2) Baker's third claim for relief fails to state a cognizable racial discrimination claim and, regardless, it is barred by Eleventh Amendment immunity; (3) Baker's state-law claims for discrimination (NRS 613.330) and for intentional infliction of emotional distress are similarly barred by the Eleventh Amendment.

The second motion to dismiss is brought by Skolnik, Foster, Dreesen, Ross, and Hendrix in their individual capacities.[44] They add the following arguments for dismissal: (1) as individuals and not employers, they can bear no Title VII liability; (2) Baker has failed to state a cognizable racial discrimination claim against anyone; (3) Baker has not stated a plausible intentional-infliction-of-emotional distress claim because the facts she pleads fall short of the high standard for extreme and outrageous conduct and physical impact or serious emotional distress necessary to prove this tort. I consider both motions together, working through the claims in the order presented in the complaint.

## Discussion

Federal Rule of Civil Procedure 8(a) governs the standard for pleadings in a federal cause of action and requires that "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

---

[41] *Id.* at 17-21.

[42] Docs. 24, 37.

[43] Doc. 24 at 2.

[44] Doc. 37 at 2.

6

claim for relief that is plausible on its face."[45]  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."[46]  The court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[47]  To state a "plausible" claim for relief, the plaintiff must "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[48]  This requires a plaintiff to state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations charged.[49]

### A. Baker's Title VII claims (first and second claims for relief) fail to state a cognizable claim against the Individual Defendants in their individual capacities.

The Individual Defendants seek dismissal of Baker's Title VII claims against them in their individual capacities on grounds that Title VII limits suits to an "employer,"[50] which they are not. The Ninth Circuit's decision in *Miller v. Maxwell's International, Inc.* supplies the simple rule in this circuit: "Employees cannot be held liable in their individual capacities under Title VII."[51]  Baker offers no controlling authority to refute this proposition.  Accordingly, Baker's Title VII claims (counts 1 and 2) are dismissed with prejudice against the Individual Defendants to the extent these

---

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[46] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[47] *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

[48] *Iqbal*, 556 U.S. at 678-79.

[49] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

[50] Doc. 37 at 4-5.  Baker's complaint does not specify whether she sues the Individual Defendants in their official or individual capacities.  Her response to the first motion suggests, however, that she is pursuing both legal theories, defendants fail to challenge whether suit has actually been brought in either capacity, and their two motions suggest they interpret the claims as having been brought against them in both capacities.  *See* Doc. 40 at 7; *cf. Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (construing notice of capacity from ambiguous complaint in part from defense theories raised in the litigation).

[51] *Ortez v. Washington County, State of Oregon*, 88 F.3d 804, 808 (9th Cir. 1996); *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583, 587 (9th Cir. 1993).

claims are brought against them in their individual capacities.[52]

### B. Baker has largely failed to exhaust her Title VII retaliation claim (second claim for relief).

Baker's Title VII retaliation claim—pled as her second claim for relief—must be further limited because she failed to properly exhaust her administrative remedies for several theories of this claim. Title VII prohibits employers from discriminating against individuals based on their sex[53] and further prevents employers from retaliating against an employee who seeks to enforce her rights under the employment discrimination statutes.[54] Exhaustion of administrative remedies in a Title VII case is a condition precedent to filing a claim in federal court.[55] To exhaust administrative remedies a plaintiff must typically file a charge of discrimination within 180 days of the claimed conduct, receive a notice-of-right-to-sue letter from the EEOC, and file suit within 90 days of that notice.[56] The 180-day time period is extended to 300 days in "deferral" states, where, as here, an aggrieved employee has brought discrimination claims before a corresponding state agency authorized to grant such relief.[57] For retaliation claims, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."[58]

---

[52] Notwithstanding their argument that Baker's "retaliation claims" (plural) should be dismissed even though Baker has brought only a single retaliation claim, Doc. 24 at 5, defendants do not move for dismissal of the official-capacity claim against Ross for sexual harassment in count 1 in either their first or second motion, and I do not reach the same here.

[53] 42 U.S.C. § 2000e-2(a)(1).

[54] *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); *see University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2523 (2013) (citations omitted).

[55] *Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1100 (9th Cir. 1998); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

[56] 42 U.S.C. § 2000e-5(e).

[57] *Id.* at § 2000e-5(e)(1).

[58] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The claim-filing process is not a jurisdictional prerequisite,[59] and is subject to application of equitable remedies such as waiver, estoppel, and tolling.[60] "The jurisdictional scope of a Title VII claimant's court action depends on the scope of both the EEOC charge and the EEOC investigation."[61] "If an agency reaches the merits of a claim . . . administrative remedies should be presumed sufficiently exhausted to permit suit in federal court."[62] Thus, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."[63] This reasonable relation is determined by considering "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred," with a critical element being the factual statement of the charge itself.[64]

Defendants attach EEOC Charge No. 34B-2010-00190 to their first motion.[65] This charge, filed on January 10, 2010, and referenced in the complaint, alleges sexual-orientation discrimination from Ross's sexual harassment.[66] Defendants also attach Baker's April 19, 2011, amendment to the charge, in which she claims NDOC retaliated against her by launching an investigation into the March 18, 2009, "sally port incident" "only after respondent was notified of [her] NERC complaint."[67] The amended charge also references Owens's November 2009 investigation of Baker for "staff discourtesy" and claims that Owens was "rude, hostile, and sarcastic after [Baker] filed the

---

[59] *Temengil v. Trust Territory of Pacific Islands*, 518 F.3d 1097, 1104 (9th Cir. 2008).

[60] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

[61] *Sommantino v. U.S.*, 255 F.3d 704, 708 (9th Cir. 2001).

[62] *Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002).

[63] *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002).

[64] *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).

[65] Doc. 24-1 at 2-3.

[66] *Id.* at 2.

[67] *Id.* at 4.

incident report and throughout the course of the investigation."[68]

Baker's complaint details additional alleged incidents of retaliation that are not recounted in her NERC filings.[69] She contends that these unexhausted retaliation incidents are "reasonably related" to the one she alleged in her April 19, 2011, amendment because they occurred during the same time period.[70] True, the numerous allegedly retaliatory events occurred over a roughly similar time period, and most occurred while Baker was stationed at FMWCC, but these factors alone do not show reasonable relatedness. Notably, Baker never alleges that she properly exhausted her administrative remedies for any of the contested retaliation events; her complaint only explicitly references Charge No. 34B-2010-00190 and her April 19, 2011, amendment to it. She alleges that her April 19, 2011, amendment was directed towards "the sex and sexual orientation discrimination and retaliation she was facing," without specifying what the particulars of this charge involved.[71] And the critically important April 19, 2011, amendment in turn only references the March 18, 2009, "sally port incident" and Owens's November 2009 investigation of Baker for "staff discourtesy."[72] The charge does not allude to any other retaliatory events or list individuals who retaliated against her. And, notably, the April 19, 2011, amended charge references only "a charge with NERC" in the singular.[73] A fair reading of the complaint and the critically important charge documents restricts Baker's exhausted charges to the March 18, 2009 "sally port incident" and the November 2009 "staff discourtesy" event. Accordingly, the court finds that Baker's Title VII retaliation claim has been exhausted only as to these two alleged incidents; it is dismissed as to all other alleged incidents.

C. **Baker has not pled a plausible claim under the Civil Rights Act of 1866 (claim 3).**

Baker's third claim for relief alleges in a thin two paragraphs that her "rights to make and

---

[68] *Id.*

[69] *See id.* at 4-5.

[70] Doc. 40.

[71] *See* Doc. 1 at 17.

[72] Doc. 24-1 at 4-5.

[73] *See* Doc. 24-1 at 4.

enforce a contract for employment were violated when Defendant Ross sexually harassed [her] and when the other [d]efendants retaliated against her, in willful and malicious violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981)."[74] 42 U.S.C. § 1981 states that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." The statute "creates a cause of action only for those discriminated against on account of their race or ethnicity."[75]

Baker has plead nothing in her complaint or in her NERC and EEOC submissions to suggest any race-based discrimination, and her opposition does not offer any fact she might allege if given a chance to amend these conclusory allegations.[76] As Baker has not pled or suggested she can plead a plausible claim for racial discrimination under 42 U.S.C. § 1981, this claim is dismissed without leave to amend because I find that amendment would be futile.[77]

**D.   The Eleventh Amendment bars Baker's state-law employment claims and intentional-infliction-of-emotional-distress claim against the state, NDOC, and the Individual Defendants sued in their official capacities.**

Defendants seek dismissal of Baker's state discrimination claims under NRS 613.330 (counts four and five) and her IIED claim (count eight), arguing that the Eleventh Amendment bars suits for damages against the state, its agencies, and individual actors sued in their official capacities.[78] Baker does not seriously dispute defendants' legal conclusion and asks for leave to amend these claims to make it clear she is bringing them against the Individual Defendants in their individual capacities only.[79] The court interprets this request as a concession of the merits of defendants' argument and a

---

[74] Doc. 1 at 19, ¶ 150.

[75] *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008).

[76] Doc. 40.

[77] Because I am dismissing this claim under Rule 12(b)(6), I decline to reach the defendants' additional argument that the claim is also barred by Eleventh Amendment immunity.

[78] Doc. 24 at 8-10.

[79] Doc. 40 at 8.

11

request to withdraw the claim except as an individual capacity one. Accordingly, Baker's fourth, fifth, and eighth claims for relief are dismissed with prejudice against the state and NDOC and as against the other defendants in their official capacities.

### E. Baker fails to state an IIED claim against anyone but Hendrix.

The Individual Defendants challenge what remains of Baker's IIED claim against them under Rule 12(b)(6), arguing that the alleged actions are not outrageous and Baker's alleged emotional distress is not sufficiently severe to give rise to a cognizable claim. I mostly agree: Baker has pled a plausible IIED claim only against Hendrix.

To prevail on her IIED claim, Baker must prove "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) . . . severe or emotional distress, and (3) actual or proximate causation."[80] Extreme and outrageous conduct must fall "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[81] Additionally, Baker must set forth "objectively verifiable indicia" establishing that she "actually suffered extreme or severe emotional distress."[82]

Baker's two-paragraph claim incorporates the background factual allegations and conclusorily summarizes that "Defendants intentionally inflicted emotional distress on [her] every time they retaliated against her after she filed a Complaint that Ross sexually harassed her and discriminated against her."[83] The incidents of retaliation that Baker alleges are primarily administrative actions like appropriating office equipment or reassigning her to different shifts.[84] There is nothing in these workplace actions that approaches the "outside all possible bounds of human decency" level required to state a cognizable IIED claim. Although Baker alleges that she was stuck in the armory for a week while it was flooded and cut her hand on a shopping cart while

---

[80] *Olivera v. Lowe*, 995 P.2d 1023, 1025-26 (Nev. 2000) (quotation omitted).

[81] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

[82] *Id.*

[83] Doc. 1 at 21.

[84] *See* Doc. 42 at 6-11.

attempting to clean up the mess, she never logically links this event to one of the alleged acts of retaliation. Indeed, she entitles this subsection of her complaint, "Retaliation - Searching Plaintiff's work area."[85] None of these allegations alleges conduct rising to the extreme-and-outrageous level.

The only event that plausibly qualifies as "extreme and outrageous" is her allegation that defendant Hendrix refused to come to her aid when she was being threatened and charged by an inmate with a history of violence.[86] She alleges that Hendrix was seen "observing the whole incident"[87] and she had to seek therapy because she was "in fear for her life" and experienced "extreme stress and anxiety" as a result of the incident.[88] At best, these facts state a plausible IIED claim against Hendrix only. Accordingly, Baker's IIED claim will survive against Hendrix in his individual capacity, but it is dismissed in its entirety against all other defendants.

### F. Leave to Amend

Finally, Baker requests leave to amend her complaint generally, and defendants oppose the request because Baker failed to attach a proposed amended complaint with her motion as required by Local Rule 15-1.

Rule 15 of the Federal Rules of Civil Procedure requires district courts to "freely give leave [to amend] when justice so requires."[89] The Ninth Circuit has long recognized that this policy is "to be applied with extreme liberality."[90] In the seminal leave-to-amend case of *Forman v. Davis*,[91] the United States Supreme Court explained, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the Plaintiff] ought to be afforded an opportunity to test

---

[85] *See* Doc. 1 at 7-8.

[86] *Id.* at 13.

[87] *Id.*

[88] *Id.*

[89] Fed. R. Civ. Proc. 15(a)(2); *Sonoma County Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).

[90] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).

[91] 371 U.S. 178, 182 (1962).

his claim on the merits." Still, amendment is not automatic. If reasons justify denying opportunity to amend, the court has discretion to foreclose amendment.[92] In the Ninth Circuit, courts consider five factors when determining whether to grant leave: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint.[93] Any of the first four factors can serve as a basis for denying leave to amend,[94] but the analysis focuses on the bad faith of the party seeking to amend the complaint, as well as the prejudice to the other party.[95]

An amendment is futile when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[96] Although Rule 15(a) "encourages leave to amend, district courts need not accommodate futile amendments."[97] Rejection of a proposed amended complaint is warranted if the amendment "would merely enlarge on the legal theory rejected" by the court.[98]

I have concluded that any amendment to Baker's § 1981 claim (count 3) would be futile because Baker does not even hint in her complaint or oppositions that she has any basis for a race-based claim. *See supra* at p. 12. Her Title VII claims against the individual defendants in their individual capacities are not legally cognizable, nor are her Eleventh Amendment-barred claims, which include her state-law employment and IIED claims against the state, NDOC, and the defendants in their official capacities. These claims, therefore, are dismissed without leave to amend because amendment would be futile.

---

[92] *See Forman*, 371 U.S. at 182.

[93] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[94] *Chudacoff v. Univ. Med. Ctr. of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

[95] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).

[96] *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).

[97] *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996).

[98] *Kentmaster Mfg. v. Jarvis Products Corp.*, 146 F.3d 691, 696 (9th Cir. 1998).

I am not yet convinced, however, that Baker cannot cure by amendment the defects in her Title VII retaliation claim (count 2) as against the state, NDOC, and the defendants in their official capacities; or her IIED claim against the other Individual Defendants in their individual capacities. There is scant evidence of bad faith, no evidence defendants will be prejudiced by the amendment, and Baker has not previously moved for leave to amend her complaint. Thus, she should be permitted leave to re-plead these allegations if she can adequately allege the necessary facts. Because she failed to attach a proposed amended complaint to her request for leave as required by this district's local rule 15-1, however, I have no way to determine whether a proposed amendment would be meritorious. Accordingly, should Baker believe that she can allege facts to show that she has properly exhausted her other retaliation theories, or that she can state the high level of facts to support an IIED claim against a defendant other than Hendrix in his or her individual capacity, she may file a proper motion for leave to amend these claims that complies with Local Rule 15-1. Although the deadline for seeking leave was May 5, 2015, under the scheduling order,[99] good cause appears to extend this deadline to June 1, 2015. Thus, should Baker have the facts to support these amendments, she must file a motion for leave to amend (that complies with all applicable rules and attaches a proper proposed draft amended complaint) by June 1, 2015.

### Conclusion

Accordingly, it is HEREBY ORDERED that Defendants' Motions to Dismiss **[Docs. 24 and 37] are GRANTED in part and DENIED in part**:

1. Baker's Title VII claims **(claims 1 & 2) are dismissed with prejudice against Skolnik, Foster, Dreesen, Ross, Hendrix, and Owens in their individual capacities**;

2. Additionally, Baker's Title VII retaliation claim **(claim 2) is dismissed without prejudice as to all defendants to the extent it is based on any incident other than the March 18, 2009, sally port incident and the November 2009 staff discourtesy incident**;

---

[99] Doc. 46.

3. Baker's racial discrimination claim under 42 U.S.C. § 1981 **(claim 3) is dismissed in its entirety and with prejudice**;

4. Baker's state-law employment claims and intentional infliction of emotional distress claim **(claims 4, 5, and 8) are dismissed with prejudice against the state, NDOC, and as against Skolnik, Foster, Dreesen, Ross, Hendrix, and Owens in their official capacities**; and

5. Baker's intentional infliction of emotional distress claim **(claim 8)** against Skolnik, Foster, Dreesen, Ross, and Owens in their individual capacities **is dismissed without prejudice.**

IT IS FURTHER ORDERED that the plaintiff's deadline to file a proper motion to amend her complaint is extended to June 1, 2015. Baker has until June 1, 2015, to file a proper motion to amend her complaint to re-plead count 2 (against official-capacity defendants only) and count 8 (against individual-capacity defendants only) with the limitations stated herein.

DATED May 12, 2015.

_____
Jennifer A. Dorsey
United States District Judge